## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Elizabeth Moeller, *et al.*,

                     Plaintiffs,      Case No. 16-cv-11367

v.                                 Judith E. Levy
                                     United States District Judge

American Media, Inc., *et al.*,

                                Mag. Judge Elizabeth A. Stafford

                     Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [8]

Before the Court is defendants' motion to dismiss.  (Dkt. 8.)  For the reasons set forth below, defendants' motion is denied.

### I. Background

Plaintiffs Elizabeth Moeller and Nicole Brisson are Michigan citizens who subscribe to magazines published by defendants American Media, Inc. and Odyssey Magazine Publishing Group, Inc.  (Dkt. 1 at 10-12.)

Defendants, as magazine publishers, maintain a database of their subscribers and the magazines to which they subscribe.  (*Id.* at 2.) Plaintiffs refer to such information as their personal-reading information.

(*Id.*)  Plaintiffs claim that defendants unlawfully disclosed their personal-reading information to third-parties in two ways.  First, plaintiffs allege that defendants shared the information with "data-mining companies." (*Id.*)  Data-mining companies add information they may have about a particular subscriber—including age, gender, ethnicity, income level, etc.—to defendants' records.   (*Id.*)   The data miners' additions to defendants' records increase the "street value" of the personal-reading information when defendants, in turn, sell subscribers' information to third parties.  (*Id.*)  Second, plaintiffs allege that defendants participated in "database cooperatives," through which defendants traded subscribers' information with other publishers.  (*Id.* at 9.)

Thus, defendants allegedly profited from the unlawful disclosure of plaintiffs' personal-reading information, and plaintiffs claim that these disclosures made their subscriptions less valuable.  (*Id.* at 12.)  Plaintiffs did not consent to the disclosure of their information, nor have defendants provided plaintiffs notice of their practices.  (*Id.* at 10.)

Plaintiffs claim the disclosure of their personal-reading information violates the Michigan Personal Privacy Protection Act.  (*Id.* at 12, 14.)

Plaintiffs also claim that any revenue derived from selling subscribers' personal information unjustly enriched defendants.  (*Id.* at 23.)

The Michigan Personal Privacy Protection Act ("PPPA") prohibits individuals "engaged in the business of selling at retail, renting, or lending books or other written materials" from "[disclosing] to any person, other than the customer, a record or information concerning the purchase . . . of materials by a customer that indicates the identity of the customer." MICH. COMP. LAWS § 445.1712.  Further, the original PPPA provided that a customer whose information was disclosed could recover "actual damages, including damages for emotional distress, or $5,000, whichever is greater." Mich. Pub. Acts 1988, No. 378, § 5, *eff.* Nov. 7, 1989 (amended 2016).

In 2016, the Michigan legislature amended the PPPA.  MICH. COMP. LAWS § 445.1711 *et seq*.) ("Am. PPPA").  The amendment excluded from liability "disclosure[s] incident to the ordinary course of business."  Am. PPPA § 3(d).  The legislature clarified that the new exception "only applies to a record or information that is created or obtained after the effective date of the amendatory act."  *Id.*  The legislature also amended section five of the PPPA, which governs the remedies available under the act.  Section five originally stated that a customer "identified in a record or other

information disclosed in violation" of the PPPA could sue to recover "[a]ctual damages, including damages for emotional distress, or $5000, whichever is greater." Am. PPPA § 5. The amendment stated that only a customer "who suffers actual damages as a result of a violation of this act may bring a civil action" and removed the statutory-damages provision. *Id.* And the legislature included an enacting section which states, "[t]his amendatory act is curative and intended to clarify" provisions of the original statute. Am. PPPA, enacting § 2.

Plaintiffs filed this suit in April 2016, and the amended statute went into effect on July 31, 2016. *Id.*

Defendants move to dismiss plaintiffs' PPPA claims on two grounds. First, defendants argue that plaintiffs do not have standing because they have not suffered an injury-in-fact. Second, defendants argue that the recent amendment of the PPPA precludes plaintiffs' claims. Defendants also move to dismiss plaintiffs' unjust enrichment claims.

## II. Standard of Review

Defendants bring their motion to dismiss under both Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

When subject-matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden to prove jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) challenges to a court's subject-matter jurisdiction may be either facial or factual. *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A facial attack "questions the sufficiency of the pleading," whereas a factual attack challenges the veracity of the facts on which subject-matter jurisdiction is predicated. *Id.* When reviewing a facial challenge, the Court "takes the allegations in the complaint as true." *Id.* But when reviewing a factual challenge "no presumptive truthfulness applies to the factual allegations." *Id.*

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.  Analysis

#### A. Standing

Defendants bring a facial challenge to plaintiffs' standing under Fed. R. Civ. P. 12(b)(1). (Dkt. 8 at 23.) Thus, the Court "will take the allegations in the complaint as true." *Ohio Nat. Life Ins. Co.*, 922 F.2d at 325.

"[A] plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007). Constitutional standing requires that a plaintiff: (1) suffer an "injury in fact"; (2) that is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that a favorable decision is likely to redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants argue that plaintiffs lack standing to pursue claims for violations of the PPPA because they did not suffer an injury-in-fact. To establish an injury-in-fact, plaintiffs must plead facts showing that they suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id.* at 560. A plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1549 (2016). Thus, plaintiffs must allege "a concrete injury even in the context of a statutory violation." *Id.* "Concrete is not, however, necessarily synonymous with tangible . . . intangible injuries can nevertheless be concrete." *Id.*

To evaluate whether intangible harms are sufficiently concrete for Article III purposes, courts consider:  (1) whether the harm has been "traditionally regarded as providing a basis for a lawsuit in English or American courts"; and (2) the judgment of the legislature because it "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* But a

"bare procedural violation" of a statute does not itself satisfy the injury-in-fact requirement of Article III. *Id.* at 1550.

Here, defendants argue that plaintiffs' claims amount to a "bare procedural violation" of the PPPA because plaintiffs have not identified a concrete harm resulting from defendants' unlawful disclosure of their personal-reading information. (Dkt. 8 at 22.) Defendants argue that *Spokeo* is dispositive. *Id.* Although defendants correctly read *Spokeo* to hold that violation of a statute alone does not automatically establish a concrete injury, *Spokeo* does not foreclose standing here.

In the complaint, plaintiffs allege that defendants violated their privacy rights by disclosing personal-reading information to data-mining companies and third-party database cooperatives. (Dkt. 1 at 11.) Plaintiffs also claim that their subscriptions without privacy protections are "substantially less valuable" than subscriptions with privacy protections. (*Id.* at 12.) Plaintiffs' alleged injuries are concrete, as set forth below.

Subscribers' right to privacy in their personal-reading information is grounded in an interest "traditionally regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549.

Indeed, "the common law ha[s] long recognized a right to personal privacy, and both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *Hillson v. Kelly Servs. Inc.*, No. 15-CV-10803, 2017 WL 279814, at \*4 (E.D. Mich. Jan. 23, 2017). Here, the Michigan Legislature recognized subscribers' right to privacy in their personal-reading information, and through the enactment of the PPPA, "define[d] the injury" and "articulate[d] the chain of causation that gives rise to the injury." *Spokeo*, 136 S. Ct. at 1549. Thus, although an invasion of plaintiffs' privacy in violation of the PPPA may be "intangible," it is sufficiently concrete. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (holding that harm resulting from disclosure of personal information is "concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information.")

And because the alleged violation of the Michigan PPPA here implicates plaintiffs' "concrete interest" in the nondisclosure of their personal information without their permission, they have adequately pled a concrete injury-in-fact. *Lujan*, 504 U.S. at 572.

Moreover, plaintiffs allege that the disclosure of their protected information "deprived [them] of the full value of their paid-for subscriptions." (Dkt. 1 at 20.)  Taking plaintiffs' allegations as true at this stage, the economic harm caused by the disclosure of their personal information bolsters their claim of concrete injury.  *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) (same).

Accordingly, plaintiffs have standing.

## B.  Retroactivity of the PPPA Amendments

Defendants argue that the 2016 PPPA amendment is retroactive and thus forecloses plaintiffs' claims under the act.  (Dkt. 8 at 25.)   The amendment, in pertinent part, requires that plaintiffs "suffer [] actual damages as a result of a violation of this act" in order to bring a claim. Am. PPPA § 5(2).  Prior to the 2016 amendment, courts consistently held that a violation of the PPPA alone was sufficient to provide a cause of action.  *See Kinder v. Meredith Corp.*, No. 14-CV-11284, 2014 WL 4209575, at *3 (E.D. Mich. 2014).

To determine whether a Michigan statute should be applied retroactively, the Court must apply Michigan law.  *In re Oswalt*, 444 F.3d 524, 528 (6th Cir. 2006) (applying Michigan law to determine whether a

10

Michigan statute operates retroactively).  And "[i]n Michigan, the question of whether a statute should be applied retroactively or only prospectively is a question of legislative intent."  *Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 739 (6th Cir. 2013.)

Under Michigan law, "statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." *Frank W. Lynch & Co. v. Flex Techs., Inc.*, 463 Mich. 578, 583 (2001); *see Lafontaine Saline, Inc. v. Chrysler Group, LLC*, 496 Mich. 26, 38 (2014).  The "context of the statute itself" may demonstrate the requisite "clear, direct, and unequivocal intent" that a statute apply retroactively.  *Davis v. State Emps.' Ret. Bd.*, 272 Mich. App. 151 (2006).  "The Michigan Supreme Court has repeatedly observed that the Michigan Legislature 'knows how to make clear its intention that a statute apply retroactively,' so the absence of express retroactive language is a strong indication that the Legislature did not intend a statute to apply retroactively." *Kia Motors Am., Inc.*, 706 F.3d at 739 (quoting *Brewer v. A. D. Trans. Express, Inc.*, 486 Mich. 50 (2010)). The amendment to the PPPA nowhere contains express retroactivity language.  *Compare* MICH. COMP. LAWS § 141.1157 ("This act shall be applied retroactively . . .").

11

Defendants nevertheless argue that the Michigan legislature manifested its clear intent that the PPPA amendment apply retroactively. (Dkt. 8 at 25.)  Defendants rely primarily on the enacting section, which provides that "the amendatory act is curative and intended to clarify . . . that a civil action for a violation of [the act] may only be brought by a customer who has suffered actual damages as a result of the violation." Am. PPPA, enacting § 2.   But the legislature's statement that the amendment is "curative" and "intended to clarify," does not "clearly indicate" retroactivity.  It is just as likely that the legislature sought to affect the future application of the PPPA as it is that the legislature sought to alter the rights of those whose personal-reading information had already been disclosed in violation of the existing PPPA.

Moreover, in cases where Michigan courts have retroactively applied statutes containing "curative" or "intended to clarify" language, the statutes have contained additional language—not present here—that more clearly manifests legislative intent that the statute apply retroactively.

For example, in *Doe v. Department of Corrections*, the court found sufficient legislative intent in the enacting language: "this amendatory act is curative and intended to correct any misinterpretation of legislative

intent in [an earlier case]. This legislation further expresses the original intent of the legislature." 641 N.W.2d 269, 273 (Mich. Ct. App. 2001). Although the *Doe* court found that the legislature's use of "curative" may suggest retroactivity, the court placed the most interpretive weight on the amendment's statement that it expressed the legislature's "original intent." *Id.* at 61. The enacting language here does not contain similar or analogous language to that in *Doe.*

And in *Daimler Chrysler,* a statute was held to apply retroactively because the enacting statement stated that "[t]his amendatory act is curative and shall be retroactively applied, expressing the original intent of the legislature." *Daimler Chrysler Servs. of N. Am., LLC v. Dep't of Treasury,* No. 288347, 2010 WL 199575, at *2 n.1 (Mich. Ct. App. Jan 21, 2010). As in *Doe*, the statement of original intent is sufficient to clearly indicate retroactivity, but the PPPA amendment's enacting section contains no such language.

Defendants argue that the legislature enacted the PPPA amendment to remedy judicial interpretations of the act with which the legislature disagreed. But the legislature knows how to expressly correct judicial interpretations, and it has not done so here. *See, e.g., Romein v. Gen.*

13

*Motors Corp.*, 425 N.W.2d 174, 176 (Mich. Ct. App. 1988) (amendment stated that the purpose of the act was to correct an "erroneously rendered" Michigan Supreme Court decision interpreting the statute.)

The absence of express language or clear contextual indications of retroactivity makes clear that the intent of the Michigan legislature here is—at best—ambiguous. Thus, the legislature has not "clearly manifested" its intent that the statute apply retroactively. *Frank W. Lynch & Co*, 463 Mich. at 578.

The presumption against retroactivity does not apply to "statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights." *Id.* at 584. Defendants argue that the amendment here is remedial and does not affect existing rights. (Dkt. 8 at 31.) But Michigan courts have been clear that a statute cannot be considered remedial if it "affect[s] substantive rights." *Id.* at 585. Here, the PPPA amendment affects substantive rights, because it "alter[s] the scope of those rights and the recourse available should the rights be violated." *Boelter*, 2016 WL 3369541, at *6. Thus, the amendment is not remedial, and defendants have not defeated the presumption of prospective application.

14

For these reasons, the 2016 PPPA amendment does not operate retroactively, and the Court need not address whether plaintiffs' claims survive the amended PPPA.

### C. Unjust Enrichment

Defendants move to dismiss plaintiffs' unjust enrichment claims on two grounds. First, defendants argue that plaintiffs have failed to state a claim under Michigan law for unjust enrichment "because they lost nothing of value." (Dkt. 8 at 34.) Second, defendants argue that the PPPA preempts the common-law remedy for unjust enrichment. (*Id.* at 35.)

Under Michigan law, a claim for unjust enrichment requires the plaintiff "to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of N.Y. Mellon,* 300 Mich. App. 9, 22 (2012).

Plaintiffs have sufficiently pled an unjust enrichment claim because they allege that defendants' unlawful disclosure of their personal information rendered their subscriptions less valuable. Moreover, plaintiffs allege that defendants have made a profit by selling subscribers' information and have retained the revenue from their unlawful

15

disclosures.  (Dkt. 1 at 23.)  Thus, plaintiffs have sufficiently pled a claim for unjust enrichment under Michigan law.  *See Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at *8 (E.D. Mich. Aug. 6, 2013) (same).

Moreover, courts in this district and elsewhere have found indistinguishable unjust enrichment claims under Michigan law to survive motions to dismiss for failure to state a claim.  *See, e.g.*, *Boelter v. Advance Magazine Publishers Inc.*, No. 15 CIV. 5671 (NRB), 2016 WL 5478468, at *18 (S.D.N.Y. Sept. 28, 2016); *Boelter*, 2016 WL 336941 at *15; *Kinder v. Meredith Corp.*, No. 14-CV-11284, 2014 WL 4209575, at *7 (E.D. Mich. Aug. 26, 2014); *Halaburda*, 2013 WL 4012827, at *8.

Finally, defendants argue that plaintiffs' unjust enrichment claims are preempted by the PPPA because it provides the exclusive remedy for the disclosure of plaintiffs' personal information.  (Dkt. 8 at 35.)  "Whether or not a statutory scheme preempts the common law on a subject is a matter of legislative intent."  *Millross v. Plum Hollow Golf Club*, 429 Mich. 178, 183 (1987).  Michigan courts have found legislative intent to preempt common law claims when the statute expressly says so.  *See Hoerstman Gen. Contracting, Inc. v. Han*, 474 Mich. 66, 74

16

(2006) (holding that when the legislature intends abrogate the common law, it "should speak in no uncertain terms").  Here, although the PPPA provides for damages for violation of the statute, it does not expressly preclude common-law remedies.

Defendants point out that under Michigan law, "if a statute gives new rights and prescribes new remedies . . . a party seeking a remedy under the act is confined to . . . that [remedy] only."  *Dep't of Agric. v. Appletree Mktg., LLC.*, 485 Mich. 1, 7 (2010).  But the court in *Appletree* held that the Michigan legislature did not displace parallel common law claims because the statute "did not contain an exclusive remedy provision."  *Id.*  The PPPA does not have such a provision.  Because the PPPA does not expressly displace common-law remedies, it does not preempt plaintiffs' well-pled unjust enrichment claim here.

Accordingly, plaintiffs have sufficiently pleaded a claim for unjust enrichment.

## IV.  Conclusion

For the reasons set forth in this opinion, defendants' motion to dismiss (Dkt. 8) is DENIED.

IT IS SO ORDERED.

Dated: January 27, 2017            s/Judith E. Levy
Ann Arbor, Michigan             JUDITH E. LEVY
                                      United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 27, 2017.

                                      s/Felicia M. Moses
                                      FELICIA M. MOSES
                                      Case Manager