## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELIZABETH MOELLER and NICOLE BRISSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICAN MEDIA, INC., a Delaware corporation, and ODYSSEY MAGAZINE PUBLISHING GROUP, INC., a Delaware corporation,<br><br>    Defendants. | Case No. 2:16-cv-11367-JEL-EAS<br><br>[Hon. Judith E. Levy] |

## PLAINTIFFS' MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**Respectfully submitted by:**

Jay Edelson
jedelson@edelson.com
Eve-Lynn Rapp
erapp@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Scott A. Bursor
scott@bursor.com
Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Tel: 646.837.7150
Fax: 212.989.9163

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596-1111
Fax: (248) 671-0335

*Proposed Class Counsel*

## STATEMENT OF ISSUES PRESENTED

1.      Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiffs' Answer: Yes.**

2.      Should Plaintiffs' Counsel be appointed as Class Counsel?

**Plaintiffs' Answer: Yes.**

3.      Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed settlement class?

**Plaintiffs' Answer: Yes.**

4.      Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184
 (2013)

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007)

*Fidel v. Farley,* 534 F.3d 508 (6th Cir. 2008)

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001)

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.,* No. 11-14275, 2013 WL
 692856 (E.D. Mich. Feb. 26, 2013)

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161 (E.D.
 Mich. Aug. 2, 2010)

*Karkoukli's, Inc. v. Dohany*, 409 F.3d 279 (6th Cir. 2005)

*McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D. Mich. 2013)

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II.  BACKGROUND .................................................................................... 4

    A.  Michigan's Video Rental Privacy Act .............................................. 4

    B.  Plaintiffs' Allegations ...................................................................... 5

    C.  The Litigation History and Settlement Discussions ........................ 6

III.  TERMS OF THE SETTLEMENT ...................................................... 8

    A.  Class Definition ................................................................................ 8

    B.  Monetary Relief ............................................................................... 9

    C.  Prospective Relief ............................................................................ 9

    D.  Release ............................................................................................ 10

    E.  Notice and Administration Expenses ............................................. 10

    F.  Incentive Award ............................................................................. 10

    G.  Attorneys' Fees and Expenses ....................................................... 10

IV.  THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION
     FOR SETTLEMENT PURPOSES ..................................................... 11

    A.  The Numerosity Requirement Is Satisfied .................................... 12

    B.  The Commonality Requirement Is Satisfied .................................. 13

    C.  The Typicality Requirement Is Satisfied ....................................... 15

    D.  The Adequacy Requirement Is Satisfied ....................................... 17

E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ................................................................................ 20

    1.    *Common Questions of Law and Fact Predominate* ............... 21

    2.    *A Class Action Is a Superior Method for Adjudicating This Action* ...................................................................................... 23

V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......................................................................................... 25

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................................................................................ 26

VII.    THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE ...................................................................................... 32

VIII.    CONCLUSION .................................................................................... 34

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES:

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................. 11, 21, 23

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................... 11

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424 (2001)..... 29 n.1

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................ 32

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................ 13, 14, 21

## UNITED STATES CIRCUIT COURT OF APPEALS CASES:

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007) ...................................... 18

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................. 12, 16

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*,
    722 F.3d 838 (6th Cir. 2013) ............................................................ 11, 13, 22

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ....................................... 3, 31

*Parker v. Time Warner Entm't Co.*, 331 F.3d 13 (2d Cir. 2003) ............................ 29

*Powers v. Hamilton County Public Defender Com'n*,
    501 F.3d 592 (6th Cir. 2007) ................................................................. 21, 23

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ................................... 26

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ......................... 18

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2010) .................. 23, 24

## UNDERLINED STATES DISTRICT COURT CASES:

*Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402 (E.D. Mich. 2012) ........ 24

*Coulter-Owens v. Rodale, Inc.*,
    1:14-cv-11284-TLL-CEB, Dkt. 54 (E.D. Mich. Sept. 29, 2016) ............. 1 n.1

*Coulter-Owens v. Time, Inc.*,
    308 F.R.D 524 (E.D. Mich. 2015) ......................................................... *passim*

*Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301 (E.D. Mich. 2008) ......................... 13

*Date v. Sony Electronics, Inc.*,
    2013 WL 3945981 (E.D. Mich. July 31, 2013) .......................................... 17

*Davidson v. Henkel Corp.*, 302 F.R.D. 427 (E.D. Mich. 2014) ...................... 12–13

*Davis v. Bank of Am.*, 9:05-cv-80806 (S.D. Fla.) ............................................... 4, 31

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............... 19

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) ...................... 4, 31

*Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001) ..................... 16

*Halaburda v. Bauer Publishing Co, LP*,
    2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015) ........................ *passim*

*Harris v. comScore*, Inc., 292 F.R.D. 579 (N.D. Ill. 2013) ................................... 19

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326, 339 (E.D. Mich. 2001) ............................................... 21, 24

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389, Dkt. 69 (N.D. Cal. 2010) ........................................ 19–20

*In re Google Buzz Privacy Litig.*,
    2011 WL 7460099 (N.D. Cal. June 2, 2011) .......................................... 3, 31

*In re Michaels Stores Pin Pad Litigation*,

Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011).................. 19

*In re Netflix Privacy Litig.*,
     No. 5:11-cv-00379, Dkt. 256 (N.D. Cal. March 18, 2013) ...................... 3, 31

*In re Packaged Ice Antitrust Litig.*,
     2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)............................................ 26

*Int'l Union v. Ford Motor Co.*,
     2006 WL 1984363 (E.D. Mich. July 13, 2006)................................. 17, 26–27

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) ............. 27–28

*Kinder v. Meredith Corporation*,
     1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015) .............................. *passim*

*Kinder v. Meredith Corp.*,
     2016 WL 454441, at *1 (E.D. Mich. 2016)................................................. 19

*Landwehl v. AOL*,
     No. 11-cv-1014, Dkts. 91, 133 (E.D. Va. May 24, 2013) .................... 3–4, 31

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)............. 30

*Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997)............... 17

*Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412 (E.D. Mich. 2013) .......... 21

*McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D. Mich. 2013) ............. 12

*Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013) ............... 13, 20

*Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007)........................ 30

*Parker v. Time Warner Entertainment Co.*,
     239 F.R.D. 318 (E.D.N.Y. 2007)................................................................ 15

*Reese v. CNH America, LLC,* 227 F.R.D. 483 (E.D. Mich. 2005) ........................ 16

*Sheick v. Auto. Component Carrier, LLC*,

2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)...................................... 26, 27

*Supnick v. Amazon.com, Inc.*,
     2000 WL 1603820 (W.D. Wash. May 18, 2000) ........................................ 15

*UAW v. Gen. Motors Corp.*, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ......... 28

## STATUTES:

M.C.L. § 445.1712 *et seq.* ......................................................................... 4

## MISCELLANEOUS:

Conte & Newberg, 4 *Newberg on Class Actions*,
     §§ 11.25, 11:53 (4th Ed. 2002)............................................................. 26, 32

Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the
BMW Guideposts Should Not be Used to Review Statutory Penalty Awards,* 63
Rutgers L. Rev. 327 (2010) ............................................................. 29 n.4

Fed. R. Civ. P. 23 ........................................................................... *passim*

Hon. William B. Murphy & John Vanden Hombergh,
     Michigan Non-Standard Jury Instr. Civil § 32:10 (2014) .......................... 13

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)........................................ 26

## I.    INTRODUCTION

In this putative class action, Plaintiffs Elizabeth Moeller and Nicole Brisson ("Plaintiffs") challenge Defendants American Media Inc.'s ("AMI") and Odyssey Magazine Publishing Group, Inc.'s ("Odyssey," and together, Defendants") systematic practice of violating the Michigan Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act ("VRPA")— by disclosing their customers' magazine subscription histories and personal reading habits to third party companies without notice or consent. After more than a year of hard-fought litigation, the Parties have reached a class action settlement that, if approved, will resolve Plaintiffs' and the putative class's VRPA claims against Defendants. As discussed herein, the Settlement—which was reached with the assistance of Judge Wayne Andersen (ret.), formally of the Northern District of Illinois and now a mediator with JAMS (Chicago)—is modeled after settlements reached with Defendants' industry competitors that have already been met with the resounding approval of other judges in this courthouse,[1] and is an excellent result for the proposed Settlement Class.

The proposed Settlement is the largest ever reached in a VRPA case. Under the terms of the Settlement, AMI has agreed to establish a $7.6 million non-

---

[1] *See Halaburda v. Bauer Publishing Co, LP*, 2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015) (Steeh, J.); *Kinder v. Meredith Corporation*, 1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015) (Ludington, J.); *Coulter-Owens v. Rodale, Inc*., 1:14-cv-11284-TLL-CEB, Dkt. 54 (E.D. Mich. Sept. 29, 2016) (Cleland, J.).

reversionary Settlement Fund, which will be used to pay all approved claims by class members, notice and administration expenses, an incentive award to Plaintiffs, and attorneys' fees to proposed Class Counsel as awarded by the Court. In terms of the monetary relief to class members, those who submit a short and simple one-page claim form will receive a pro rata cash award, estimated at $100.[2] And, just as important, the proposed Settlement also provides meaningful prospective relief aimed at the challenged conduct by (i) prohibiting Defendant from disclosing its Michigan customers' protected information to third-party companies without first obtaining their written consent, and (ii) requiring Defendant to increase the transparency of its third party data-sharing practices—including those regarding the transfer of customer information. Such protections are to remain in place for a period of four years.

Ultimately, while the strength of the Settlement should be apparent on its face, as noted above, the Court need not evaluate the Settlement in a vacuum, since it follows—and surpasses—the example set by those that came before it. In the first ever VRPA settlement, *Halaburda v. Bauer Publishing Co, LP*, 2:12-cv-12831, Dkt. 68 (E.D. Mich. January 6, 2015), the court granted final approval to a settlement (with the same structure but on behalf of a much smaller class) that created a $775,000 cash fund, with claiming class members receiving

---

[2] This estimation is based upon typical participation rates in consumer class action

approximately $75. In *Coulter-Owens v. Rodale, Inc*., 1:14-cv-11284-TLL-CEB, Dkt. 54 (E.D. Mich. Sept. 29, 2016), the court granted final approval to a structurally-identical settlement, which (also on behalf of a smaller class) created a $4.5 million cash fund that paid out approximately $42 to each claiming class members. And, in *Kinder v. Meredith Corporation*, 1:14-cv-11284, Dkt. 72 (E.D. Mich. Oct. 5, 2015), the parties reached a settlement creating a $7.5 million cash fund, which (on behalf of a *larger* class this time) claiming class members were set to receive an estimated $50 for their claims. Here, the class members will receive an estimated $100, the most ever in a VRPA settlement. Further, in all three cases, the prospective relief was very similar to the relief secured here.

Looking beyond the VRPA to privacy cases more generally, the instant Settlement also meets or exceeds privacy settlements reached in litigation involving similar statutes that have been approved throughout the country. *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 820–22 (9th Cir. 2012) cert. denied, 134 S. Ct. 8 (2013) (approving a settlement of federal Video Privacy Protection Act ["VPPA"] claims, and directly $9.5 million to *cy pres* as the sole form of monetary relief); *In re Netflix Privacy Litig*., No. 5:11-cv-00379, Dkt. 256 (N.D. Cal. March 18, 2013) (approving $9 million *cy pres* settlement of VPPA claims); *In re Google Buzz Privacy Litig*., 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million *cy pres* settlement); *Landwehl v. AOL*, No.

11-cv-1014, Dkts. 91, 133 (E.D. Va. May 24, 2013) (approving privacy settlement providing claimants with a cash payment of up to $100); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) (approving privacy settlement providing claimants with a cash payment of $15); *Davis v. Bank of Am.*, 9:05-cv-80806 (S.D. Fla.) (approving privacy settlement providing claimants with a cash payment up to $150). While the paradigm in privacy settlements is shifting away from *cy pres* deals to cash to class members, there is little question the instant settlement affords relief to the class well beyond that which is typically secured in the privacy settlement context.

Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement falls within the range of possible approval. Accordingly, Plaintiffs respectfully requests that the Court grant their motion for preliminary approval in its entirety and direct that notice be disseminated to the proposed Settlement Class and a final fairness hearing be set.

## II.    BACKGROUND

### A.    Michigan's Video Rental Privacy Act

A brief summary of the VRPA will give context to the proposed Settlement. The Michigan legislature passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." M.C.L. § 445.1712. As such, the VRPA provides that:

> a person, or an employee or agent of the person, engaged in the
> business of selling at retail . . . books or other written materials . . .
> shall not disclose to any person, other than the customer, a record or
> information concerning the purchase . . . of those materials by a
> customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the VRPA authorizes civil actions and provides for

the recovery of statutory damages in the amount of $5,000, plus costs and

reasonable attorney fees. *See* M.C.L. § 445.1715.

### B.    Plaintiffs' Allegations

Together, AMI and its wholly owned subsidiary company, Odyssey,

(collectively "Defendants") are an International media company that publishes

some of the most widely circulated magazines in the United States. (*See* Plaintiff's

Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Plaintiffs allege that despite the

substantial revenue their magazine subscriptions generate, Defendants have a

business division dedicated to selling information related to their customers'

magazine subscription histories and personal reading habits. (*Id.* ¶¶ 2, 24, 26–27,

62–64, 72.) To increase the value of such information, Plaintiffs allege that

Defendants first trade their customers' protected reading information with certain

third parties—including data mining companies—in exchange for other

demographic and lifestyle data that such companies have already gathered (or

"mined") on each subscriber. (*Id.* ¶¶ 2, 21, 24, 27, 35-36, 45–46.) Defendants

thereafter "enhance" their own customer profiles with this additional data (e.g., their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, etc.), and then sell the enhanced information to other unrelated third parties for a profit. (*Id.* ¶¶ 2, 21, 27, 38, 48, 66, 72.)

Plaintiffs further allege that no matter how consumers subscribe (i.e., via postcard, over the phone, on defendants' websites, or through a subscription agent's website), Defendants' customers never provide consent to disclose information to third parties related to their magazine subscriptions. (*Id.* ¶¶ 3, 28, 33–36, 43–46, 68, 69.) This is because—during the subscription process— customers are never presented with or required to consent to any terms or policies informing them of Defendants' disclosure practices. (*Id.*) Likewise, even after subscribing, Defendants fail to notify customers that they will disclose any information to third parties, let alone their protected reading information. (*Id.* ¶¶ 3, 28, 33–36, 43–46, 68.) Nonetheless, Defendants are in the business of disclosing all of their customers' protected reading information to various third parties, without any consent. (*Id.* ¶¶ 2, 3, 27.)

## C.   The Litigation History and Settlement Discussions

Plaintiffs filed their class action lawsuit on April 14, 2016 in the United States Court for the Eastern District of Michigan. (Dkt. 1.) Thereafter, on June 13, 2016, Defendants moved to dismiss Plaintiffs' Complaint claims under Rules

12(b)(1) and (b)(6), arguing that Plaintiffs lacked both Article III and statutory

standing because they did not suffer actual damages from the alleged disclosures.

(Dkt. 8.) Plaintiffs' filed their response in opposition to the motion on July 5, 2015.

(Dkt. 21.)

As they were litigating the case, the Parties also decided to explore the

potential of an early resolution of the matter. To that end, they agreed to engage in

private mediation with Judge Andersen and collectively sought a stay of the

Court's ruling on the pending to dismiss to allow them some room to mediate

without a decision looming over their heads. (Declaration of Ari J. Scharg in

Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement

("Scharg Decl.") ¶¶ 2–3.) The mediation took place on October 6, 2016 at JAMS

(Chicago). (*Id.* ¶ 3.) Despite a full day of mediation, which included numerous

rounds of arm's-length negotiations, the Parties were unable to make substantial

progress toward a resolution. (*Id.*) Consequently, at the close of the mediation,

Judge Andersen made a mediator's proposal to both sides to settle the case for a

certain dollar figure. The mediator's proposal was not accepted. (*Id.*) Thus, the

Parties returned to litigation. Then, on January 27, 2017, after full briefing, the

Court denied Defendants' Motion to Dismiss in its entirety. (Dkt. 23.) Defendants

thereafter filed their Answer on February 9, 2017, which denied the allegations

generally and raised seventeen (17) affirmative defenses. (Dkt. 24.)

On March 9, 2017, the Parties filed a Joint Case Management Statement, which outlined the extensive discovery and legal issues that loomed ahead. (Dkt. 25.) The Court accepted the proposed case management schedule and the Parties embarked on discovery, with Plaintiffs propounding their first sets of interrogatories and document requests. (Scharg Decl. ¶ 4.) Despite the return to litigation, however, the Parties continued their dialogue regarding settlement, and decided to re-engage Judge Andersen to help resolve the dispute. (*Id.* ¶ 5.) Thereafter, and over the course of several weeks, Judge Andersen separately caucused with the Parties no fewer than a dozen times, which included numerous phone calls late into the night and on weekends, eventually getting both sides to narrow their negotiating positions such that he was able to make another mediator's proposal. (*Id.*) And, that second mediator's proposal came on March 22, 2017, and was ultimately accepted by all Parties on March 28, 2017. (*Id.*)

## III.   TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement ("Agreement"), attached as Exhibit 1, are briefly summarized as follows:

### A.   Class Definition

The "Settlement Class" is defined as:

[T]he approximately 415,000 Persons with Michigan street addresses who purchased a subscription to an AMI Publication to be delivered to that Michigan street address between April 14, 2010 and July 31, 2016.[3]

(Agreement ¶ 1.30.)

### B.    Monetary Relief

Defendants shall establish a $7.6 million non-reversionary Settlement Fund, from which each Settlement Class Member who submits a valid claim shall be entitled to a *pro rata* portion after payment of notice and administrative expenses, attorneys' fees, and an incentive award to the Class Representatives (divided equally amongst them). (*Id.* ¶¶ 1.32, 2.1.) No portion of the Settlement Fund will revert back Defendants. (*Id.* ¶ 2.1.)

### C.    Prospective Relief

For a period of four years from the date of entry of the Preliminary Approval Order, Defendants agree to not disclose any of their Michigan subscribers' Personal Reading Information to any third-party companies without prior written consent. (*Id.* ¶ 2.2.)

---

[3] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendants, Defendants subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. (Agreement ¶ 1.30.)

**D.     Release**

In exchange for the relief described above, Defendants and each of their related and affiliated entities (the "Released Parties" defined in ¶ 1.26 of the Settlement) will receive a full release of all claims arising out of or related to Defendants' disclosure of its Michigan customers' magazine subscription information. (*See id.* ¶¶ 1.25–1.27 for full release language.)

**E.     Notice and Administration Expenses**

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. (*Id.* ¶¶ 1.28, 1.32.)

**F.     Incentive Award**

In recognition of their efforts on behalf of the Settlement Class, Defendants have agreed that Plaintiffs Moeller and Brisson may receive, subject to Court approval, an incentive award of $10,000 (to be divided equally between them) from the Settlement Fund, as appropriate compensation for their time and effort serving as class representatives and parties to the Action. Defendants will not oppose any request limited to this amount. (*Id.* ¶ 8.3.)

**G.     Attorneys' Fees and Expenses**

Defendants have agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this Action,

in an amount to be approved by the Court. (*Id.* ¶¶ 1.32, 8.1.) Class Counsel have

agreed to petition the Court for no more than 35% of the Settlement Fund, and

Defendants have agreed not to oppose any request limited to this amount. (*Id*. ¶

8.1.)

## IV.    THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court

must determine that the proposed settlement class is appropriate for certification.

*See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification

is proper if the proposed class satisfies the numerosity, commonality, typicality,

and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a);

*see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191

(2013). Additionally, because Plaintiffs seek certification under Rule 23(b)(3), they

must also demonstrate that common questions of law or fact predominate over

individual issues and that a class action is the superior device to adjudicate the

claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to

determine whether certification of a class action lawsuit is appropriate. *In re*

*Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838,

850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies

all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Notably, in a detailed opinion performing the "rigorous analysis" required by Rule 23, Judge Steeh certified a class of purchasers of magazines published by Time, Inc. alleging that Time disclosed their protected information to Acxiom and Wiland. *Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015). Likewise, similar classes of magazine purchasers were certified for settlement purposes in the *Rodale*, *Meredith*, and *Bauer* actions. *Coulter-Owens v. Rodale, Inc.*, 1:14-cv-11284-TLL-CEB, Dkt. 44 (E.D. Mich. May 3, 2016); *Kinder v. Meredith Corp.*, No. 14-CR-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016); *Halaburda v. Bauer Publ'g Co.*, No. 2:12-cv-12831-GCS-RSW, Dkt. 63 (E.D. Mich. Sept. 26, 2014). Like the classes in those cases, the proposed Settlement Class here should be certified.

### A.     The Numerosity Requirement Is Satisfied

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no fixed numerical threshold for determining impracticability of joinder, a "substantial amount of members will suffice." *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). Only a reasonable estimate or some evidence of the number of members in the purported class is required. *Id.*; *see also Davidson v. Henkel Corp.*,

302 F.R.D. 427, 436 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs); *Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Defendants' records, the proposed Settlement Class is comprised of approximately 415,000 Michigan residents who purchased a AMI and/or Odyssey magazine subscription between April 14, 2010 and July 31, 2016. (Scharg Decl. ¶ 6.) Thus, there is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

## B.    The Commonality Requirement Is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 582–83.

Here, the common contention on which the claims of all class members depend is that Defendants disclosed each of their customers' protected information to third party data miners in violation of the VRPA. Determination of the truth or falsity of this contention will resolve an issue—the key issue in the case—central to each class member's claims at once.

Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a VRPA claim, including: (1) whether Defendants are "engaged in the business of selling at retail . . . written materials," (2) whether Defendants disclosed "information concerning the purchase . . . of those materials by a customer" to third parties, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Defendants obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Defendants accurately informed its subscribers that they could remove their names at any time from the disclosed subscriber lists. M.C.L. § 445.1712; *see also* Hon. William B. Murphy & John Vanden Hombergh, Michigan Non-Standard Jury Instr. Civil § 32:10 (2014). As such, it is a common question whether Plaintiffs and the members of the proposed Settlement Class all suffered the same injuries that entitle them to damages as a result. *See, e.g., Dukes*, 564 U.S. at 349–50. Each of these legal questions can be determined on a class-

14

wide basis using the same evidence regarding Defendants' practices. *See Coulter-Owens*, 308 F.R.D. at 532–534 (finding the litigation was "driven by issues that are common to the entire putative class.").

Numerous federal courts have similarly held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., Coulter-Owens*, 308 F.R.D. at 532–534; *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question—whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice"); *Supnick v. Amazon.com, Inc.*, 2000 WL 1603820, at *1 (W.D. Wash. May 18, 2000) (finding commonality established where the defendants engaged in common course of conduct toward every member of proposed class: disclosing their personal information without consent).

Given that there are multiple questions of law and fact common to members the Settlement Class, the commonality requirement is satisfied.

### C.    The Typicality Requirement Is Satisfied

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P.

15

23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC,* 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Here, Plaintiffs allege that Defendants' disclosure of their subscription is not a one-off situation unique to them, but rather, part of Defendants' business of disclosing their customers' subscription information to third parties without consent. (Compl. ¶¶ 3, 28, 33–36, 43–46, 68, 69.) No matter the person – whether it be Plaintiffs or other members of the putative class – the disclosures are made in the exact same manner and for the exact same purpose. And, because Plaintiffs allege that such conduct violates the VRPA, which provides identical statutory damages to all members of the Settlement Class, their claims are undoubtedly typical of the other putative class members because everyone was subjected to the

same alleged unlawful conduct (i.e., Defendants' allegedly unlawful disclosures).

Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily

advance the interests of the Settlement Class, and typicality is therefore satisfied.

*See, e.g., Coulter-Owens*, 308 F.R.D. at 534–35; *Date v. Sony Electronics, Inc.*,

2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class

Members' claims arise from the same course of conduct . . . their claims are based

on the same legal theory and the typicality requirement, which is not onerous, is

met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)

(finding typicality met where "the class representatives' claims [arose] from the

same events, legal documents, and consequences and legal theories affecting all

[class members]").

### D.   The Adequacy Requirement Is Satisfied

The final Rule 23(a) prerequisite requires a finding that the class

representative has and will "fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class

representatives are adequate are (1) the representatives must have common

interests with unnamed members of the class, and (2) it must appear that the

representatives will vigorously prosecute the interests of the class through qualified

counsel." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *19 (E.D. Mich.

July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir.

1976)); *accord Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *See Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem*, 521 U.S. at 625–26).

In this case, Plaintiffs—like each and every one of the Settlement Class Members—are Michigan customers that purchased a magazine subscription from Defendants and then allegedly had their subscription information disclosed to third parties without consent. (Compl. ¶¶ 31, 33, 35–36, 41, 43, 45–46.) Thus, Plaintiffs and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the VRPA, and ensuring that such allegedly unauthorized disclosures do not continue in the future. As such, Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class and their pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel—Jay Edelson of Edelson PC and Scott A. Bursor of Bursor & Fisher, P.A.—have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 7) (Declaration of Scott A. Bursor in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Bursor Decl.") ¶ 3.) They regularly engage in major complex litigation involving consumer privacy, including recent VRPA

cases, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. *See* Firm Resumes of Edelson PC and Bursor & Fisher, P.A., attached hereto as Exhibits 2-A and 3-B; *see also Coulter-Owens,* 308 F.R.D. at 535, 537 (achieved adversarial certification in a similar VRPA class action against a magazine publisher and appointed class counsel); *Kinder v. Meredith Corp.*, 2016 WL 454441, at \*4 (E.D. Mich. 2016) (appointing Edelson as class counsel in largest VRPA settlement to date); *Harris v. comScore*, Inc., 292 F.R.D. 579, 581 (N.D. Ill. 2013) (achieved adversarial certification in the largest-ever privacy class action and appointed class counsel); *In re Facebook Privacy Litig.,* No. 10-cv-02389, Dkt. 69 (N.D. Cal. 2010) (noting that the attorneys at Edelson are "pioneers in the electronic privacy class action field in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue"); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class

of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

Further, proposed Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting both formal and informal discovery, participating in a private mediation with Wayne R. Anderson of JAMS, and ultimately, negotiating the largest VRPA settlement to date. (Scharg Decl. ¶¶ 2-5, 8.) (Bursor Decl. ¶¶ 2, 4.) In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency. (Scharg Decl. ¶ 9.) (Bursor Decl. ¶ 4.)

Accordingly, since Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient

20

adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1.   *Common Questions of Law and Fact Predominate*

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 251 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin the commonality requirement Rule 23(a) in that both require the existence of common questions of law and fact—however, Rule 23(b) imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412, 423 (E.D. Mich. 2013). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "cases alleging a single course of wrongful conduct are particularly well-suited to class certification").

21

In this case, there are several common factual and legal questions that are at the center of this action: (1) whether Defendants are "engaged in the business of selling at retail . . . written materials," (2) whether Defendants disclosed "information concerning the purchase . . . of those materials" to third parties, (3) whether the disclosed records or information indicated the customers' identities, (4) whether Defendants obtained written permission prior the disclosures, (5) whether all the disclosures were made "for the exclusive purpose of marketing goods and services directly to the consumer," and if so, (6) whether Defendants properly informed their subscribers that they could remove their names at any time from the disclosed subscriber lists. (Compl. ¶¶ 52, 55.) These questions predominate over any issues affecting individual members (to the extent there are any) and are subject to common proof (i.e., examination of Defendants uniform conduct). (*Id.*)

Because Defendants engaged in a single course of conduct with respect to all members of the Settlement Class, their claims "will prevail or fail in unison," and as such, predominance is met. *Whirlpool*, 722 F.3d at 859 (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)); *see also Coulter-Owens*, 308 F.R.D. at 536 (finding predominance on similar claims and facts).

## 2.    *A Class Action Is a Superior Method for Adjudicating This Action*

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation, can do so. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem,* 521 U.S. at 617. Actions alleging a standard course of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545*; see also Powers*, 501 F.3d at 619 ("[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification."). Just as Judge Steeh held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendants violated the VRPA are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *See In re Cardizem*, 200 F.R.D. at 326. Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any VRPA claims against Defendants, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even be aware that Defendants are disclosing their protected information to third parties. Where consumers are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545–46.

Therefore, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. (*See* Scharg Decl. ¶ 7; Bursor Decl. ¶ 3; *see also* Exhibits 2-A, 3-A.) And as a result of their zealous efforts in this case, proposed Class Counsel have secured the largest VRPA settlement to date that provides substantial monetary relief, as well as the prospective relief necessary to protect the Settlement Class Members' privacy going forward. Thus, the Court should appoint Jay Edelson of Edelson PC and Scott A. Bursor of Bursor & Fisher, P.A. as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

While the Sixth Circuit has expressed a strong judicial policy favoring the voluntary conciliation and settlement of complex class action litigation, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), it has not specified a particular standard for granting preliminary settlement approval. Nevertheless, courts in this district generally look to two factors in making this determination. That is, preliminary approval should be given where the proposed settlement (1) does not disclose grounds to doubt its fairness, and (2) falls within the range of possible approval. *In re Packaged Ice*, 2010 WL 3070161, at *4; *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *8 (E.D. Mich. Aug. 2, 2010); *see*

26

*also Ford Motor Co.,* 2006 WL 1984363, at *4 ("The Court finds that the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies"). The proposed Settlement in this case—which achieves both monetary payments for the Settlement Class and strong prospective relief—easily satisfies both factors.

First, there are no grounds upon which to doubt the Settlement's fairness. The proposed Settlement is the largest ever in a VRPA case and was reached as a result of hard-fought litigation, which included dispositive motion practice challenging the merits of the case and the standing of Plaintiffs, formal and informal discovery geared towards understanding the size and scope of the class, and numerous rounds of arm's-length negotiations, which while productive, required two mediator's proposals for the Parties to reach a settlement. (Scharg Decl. ¶¶ 2-6, 8-13.) Ultimately, and as Judge Andersen can attest if the Court has any doubt, the Parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and there are certainly no grounds from which to doubt the fairness of the Settlement. *See Sheick*, 2010 WL 3070130, at *13 ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy[.]"); *see also IUE-CWA v. Gen. Motors*

*Corp.*, 238 F.R.D. 583, 597–98 (E.D. Mich. 2006) (finding that courts presume an absence of fraud or collusion absent evidence to the contrary).

Second, the strength of Plaintiffs' case compared to the settlement demonstrates that the proposed Settlement is fair, reasonable, and adequate, and well within the range of possible approval. Here, while Plaintiffs and proposed Class Counsel are confident in Plaintiffs' claims, they are cognizant of the risks that would accompany further litigation. (Scharg Decl. ¶ 10.) Indeed, Defendants have made clear that absent a settlement, they would continue their vigorous defense of this case. (*Id.* ¶¶ 12–13.) And of course, without a settlement, there would be the uncertainty and expense of trial, and the risks and delay of inevitable appeals. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

More specifically, Plaintiffs are aware that Defendants would continue to assert a number of defenses on the merits, including that the VRPA neither prohibits the disclosure of the magazine subscriptions information at issue (because the recipients of the disclosures are their agents), nor applies to Defendants at all because they are not engaged in the business of selling magazines "at retail," as is required to come under the scope of the statute. (Scharg. Decl. ¶ 11.) Defendants will also continue to challenge the constitutionality of the VRPA,

28

as well as its applicability to magazines in particular and the magazine publishing industry in general. (*Id.*) And, in light of the Supreme Court's recent decision in *Spokeo v. Robins*, the issue of Article III standing will continue to loom over this case, which poses risks to the continued maintenance of this case as a class action. (*Id.*) Looking beyond trial, Plaintiffs are also keenly aware of the fact that that Defendants could appeal the merits of any adverse decision, and that in light of the massive aggregate statutory damages in play it would attempt to argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.[4] (*Id.* ¶ 12); *see, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

Given these concerns, Plaintiffs and Class Counsel view the creation of the non-reversionary $7.6 million Settlement Fund—with its estimated $100 per

---

[4] Though Plaintiffs maintain that the sheer size of a class-wide statutory damages award cannot render it unconstitutional—*see* Daniel R. LeCours, Note, *Steering Clear of the "Road to Nowhere": Why the BMW Guideposts Should Not Be Used to Review Statutory Penalty Awards,* 63 Rutgers L. Rev. 327 (2010); *cf. Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424, 443 (2001) ("I continue to believe that the Constitution does not constrain the size of punitive damages awards.") (Thomas, J. concurring) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 599 (1996) (Scalia, J., joined by Thomas, J., dissenting))—they acknowledge that if they obtained a judgment on the merits and were awarded statutory damages, the $3 billion damages award would likely be reduced.

claimant payment—as well as the required injunctive relief, to be an extraordinary result for the class. (Scharg Decl. ¶¶ 6, 14.) This is especially true considering the "all or nothing" nature of Plaintiffs' statutory claims: if they were to lose any aspect of this case, the class would get nothing. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes "zero sum" undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions . . . are irreconcilable."); *see also Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").

Further, in terms of monetary relief, the Settlement's projected $100 per-claim payment exceeds the relief obtained in any other VRPA settlement to date, including in *Meredith*, which is nearly identical to this settlement (except *Meredith* involved a larger class that received less money) and was approved recently in this District. (Scharg Decl. ¶ 6.) And extending beyond the VRPA into the privacy realm more generally, the Settlement is in line with (and in some instances exceeds) the relief secured in other privacy settlements involving similar statutes.

*See, e.g., Lane*, 696 F.3d at 820-22 (approving a $9.5 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *Halaburda*, No. 2:12-cv-12831 (granting final approval to a settlement that provided claimants with an estimated $75 and similar injunctive relief); *Fraley*, 966 F. Supp. 2d at 948 (approved settlement providing claimants with a cash payment of $15 in right to publicity case with potential statutory damages of $750); *Landwehl*, Case No. 11-cv-1014, Dkts. 91, 133 (approving settlement providing claimants with a cash payment of up to $100 in Electronic Communications Protection Act ["ECPA"] case with potential statutory damages of $10,000)*; In re Netflix Privacy Litig*., No. 5:11-cv-00379, dkt. 256 (N.D. Cal. March 18, 2013) (approving $9 million settlement payment to *cy pres* as the sole form of monetary relief in case involving VPPA claims); *In re Google Buzz Privacy Litig*., 2011 WL 7460099, at *3 (N.D. Cal. June 2, 2011) (approving $8.5 million payment to *cy pres* as the sole form of monetary relief in ECPA case with potential statutory damages of $10,000); *Davis v. Bank of Am.*, 9:05-cv-80806 (S.D. Fla.) (approving settlement providing claimants with a cash payment up to $150 in Driver's Privacy Protection Act case with potential statutory damages of $5,000). Thus, the proposed Settlement is eminently fair, reasonable, and in line with the results achieved by other statutory privacy class actions that have received final approval from courts in this District and across the country.

For these reasons, Plaintiffs and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that that it is fair, reasonable, and adequate, and well within the range of possible approval. (Scharg Decl. ¶ 14.) Accordingly, the Court should grant preliminary approval.

## VII.   THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement Administrator will send direct notice by email to all Settlement Class Members for whom a valid email address is identified in Defendants' records. (Agreement ¶ 4.1(b); *see* Exhibit 1-B.) The email will contain an electronic link to the online claim form. (*Id.*) Next, the Settlement Administrator will send direct notice by First Class U.S. Mail, along with a postcard claim form with prepaid return postage, to all the Settlement Class Members who did not receive an email. (Agreement ¶ 4.1(c); *see* Exhibit 1-C.) Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Exhibit 1-D), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.[5] (Agreement ¶ 4.1(d).) Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* ¶ 4.1(e).)

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

---

[5] The Settlement Website URL is www.americanmediaincsettlement.com.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Class, (iv) appointing Plaintiffs Moeller and Brisson as Class Representatives, (v) appointing Jay Edelson of Edelson PC and Scott A. Bursor of Bursor & Fisher, P.A. as Class Counsel, (vi) scheduling a Final Fairness Hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[6]

Dated: April 18, 2017                     Respectfully submitted,

**ELIZABETH MOELLER** and **NICOLE BRISSON**, individually and on behalf of a class of similarly situated individuals

By: /s/ Ari J. Scharg
One of their attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Eve-Lynn Rapp
erapp@edelson.com
EDELSON PC

---

[6] A [Proposed] Preliminary Approval Order is attached hereto as Exhibit 4.

350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: (248) 596.1111
Fax: (248) 671.0335

Scott A. Bursor
scott@bursor.com
Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, PA
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: (212) 989-9163

*Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, hereby certify that on April 18, 2017, I served the above and foregoing ***Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

/s/ Ari J. Scharg