## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ELIZABETH MOELLER and NICOLE BRISSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MEDIA, INC., a Delaware corporation, and ODYSSEY MAGAZINE PUBLISHING GROUP, INC.,<br>a Delaware corporation,<br><br>Defendants. | Case No. 2:16-cv-11367-JEL-EAS<br><br>[Hon. Judith E. Levy] |

## PLAINTIFFS' MOTION FOR AND BRIEF IN SUPPORT OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

**Respectfully submitted by:**

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Eve-Lynn Rapp
erapp@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

Tel: 312.589.6370

Henry M. Scharg
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

Scott A. Bursor
scott@bursor.com
Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

*Counsel for the Plaintiffs and the Settlement Class*

## PLAINTIFFS' MOTION FOR
## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

Plaintiffs Elizabeth Moeller and Nicole Brisson hereby move the Court to grant their Motion for Attorneys' Fees, Expenses, and Incentive Awards. Specifically, Class Counsel respectfully requests that the Court grant $2,660,000 in attorneys' fees and expenses and an incentive award of $10,000, divided equally between the Plaintiffs. In accordance with Local Rule 7.1(a), Plaintiffs have ascertained that counsel for Defendants American Media, Inc. and Odyssey Magazine Publishing Group, Inc. will not oppose the relief sought by this Motion. (*See* Parties' Class Action Settlement Agreement §§ 8.1, 8.3.)[1]

For the reasons discussed in the accompanying brief, the Motion should be granted.

---

[1] A copy of the Parties' Class Action Settlement Agreement is attached hereto as Exhibit A.

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

**STATEMENT OF THE ISSUES PRESENTED**

1.      Whether this Court should award Class Counsel attorneys' fees and expenses in the amount of $2,660,000—35% of the $7,600,000 common fund created for the benefit of the class—to compensate them for achieving a substantial benefit for a class of consumers under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715, *et seq*?

**Plaintiffs' Answer: Yes.**

2.      Whether this Court should award Plaintiffs Elizabeth Moeller and Nicole Brisson an incentive award of $10,000, divided equally between the Plaintiffs, in recognition of their zealous efforts on behalf of the class, which have demanded active involvement in this case for over a year?

**Plaintiffs' Answer: Yes.**

## **CONTROLLING AND MOST IMPORTANT AUTHORITY**

**UNITED STATES SUPREME COURT CASES:**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)

**UNITED STATES COURT OF APPEALS CASES:**

*Gascho v. Glob. Fitness Holdings, LLC*,
    No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016)

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003)

*In re Pampers Dry Max Litig.*,
    724 F.3d 713 (6th Cir. 2013)

*Isabel v. City of Memphis*,
    404 F.3d 404 (6th Cir. 2005)

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974)

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993)

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
    436 F. App'x 496 (6th Cir. 2011)

**UNITED STATES DISTRICT COURT CASES:**

*Coulter-Owens v. Rodale, Inc.*,
    No. 14-cv-12688 (E.D. Mich. Sep. 29, 2016)

*Halaburda v. Bauer Publ'g Co., LP*,
    No. 12-cv-12831 (E.D. Mich. 2013)

*In re Cardizem CD Antitrust Litig.*,
        218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
        248 F.R.D. 483 (E.D. Mich. 2008)

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
        1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Kinder v. Meredith Corp.*,
        No. 13-cv-11284 (E.D. Mich. May 18, 2016)

*Kogan v. AIMCO Fox, L.P.*,
        193 F.R.D. 496 (E.D. Mich. 2000)

*Shane Grp., Inc. v. BCBS of Mich.*,
        2015 WL 1498888 (E.D. Mich. Mar. 31, 2015)

**MISCELLANEOUS:**

Fed. R. Civ. P. 23

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................ 1

II.    **FACTUAL BACKGROUND AND UNDERLYING LAW** ...................... 2

    **A. Plaintiffs' Allegations under the PPPA** .................................. 3

    **B. The Litigation and Work Performed to Benefit the Class** ................. 5

    **C. The Terms of the Settlement Agreement** .............................. 8

III.   **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED.** ........................................................ 8

    **A. The percentage method should be used to calculate fees.** ................. 10

    **B. The reasonableness of the requested fees is supported by this Circuit's six-factor test.** ........................................................ 11

        *1.  Class Counsel have secured a valuable benefit for the class.* .... 12

        *2.  Society has a stake in incentivizing the pursuit of complex consumer privacy litigation.* ............................................ 16

        *3.  Class Counsel took the case on a contingent basis, confronting a significant risk of nonpayment.* ..................................... 18

        *4.  The complexity of the litigation supports the requested fees.* ...... 19

        *5.  The Parties are both represented by skilled counsel.* ................. 20

        *6.  The value of the legal services performed on an hourly basis is reasonable.* ............................................................. 22

    **C. The Requested Incentive Awards Reflect Ms. Moeller and Ms. Brisson's Active Involvement in this Action and Should be Approved.** ................................................................ 25

IV.   **CONCLUSION** ............................................................. 27

## <u>TABLE OF AUTHORITIES</u>

### <u>United States Supreme Court Cases:</u>

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................. 12

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................. 17

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................. 23

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ................................................................. 10

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .............................................................. 21

*Stanley v. Georgia*,
    394 U.S. 557 (1969) ................................................................... 3

### <u>United States Court of Appeals Cases:</u>

*Brian A. v. Hattaway*,
    83 F. App'x 692 (6th Cir. 2003) ............................................... 23

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) ................................................... 11

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ................................................. 25

*Coulter-Owens v. Time Inc.*,
    2017 WL 2731309, at *6 (6th Cir. June 26, 2017)................... 15

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) .................................... 9, 12, 13, 16

*Geier v. Sundquist*,
  372 F.3d 784 (6th Cir. 2004) .................................................... 24

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) ............................................... 25, 26

*In re Pampers Dry Max Litig.*,
  724 F.3d 713 (6th Cir. 2013) .................................................... 26

*Isabel v. City of Memphis*,
  404 F.3d 404 (6th Cir. 2005) .................................................... 23

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .................................................... 24

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .................................................... 14

*Mathias v. Accor Econ. Lodging, Inc.*,
  347 F.3d 672 (7th Cir. 2003) .................................................... 11

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) .................................................. 11

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ........................................................ 9

*Van Horn v. Nationwide Property & Cas. Ins. Co.*,
  436 F. App'x 496 (6th Cir. 2011) .......................................... 23, 24

## United States District Court Cases:

*Appoloni v. United States*,
  218 F.R.D. 556 (W.D. Mich. 2003) ............................................ 17

*Connectivity Sys. Inc. v. Nat'l City Bank*,
  2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ............................. 24

*Coulter-Owens v. Rodale, Inc.*,
    No. 14-cv-12688 (E.D. Mich. Sep. 29, 2016) ................................. 10, 12, 13

*Dick v. Sprint Commc'ns Co., L.P.*,
    297 F.R.D. 283 (W.D. Ky. 2014) ................................................................ 12

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014)................................................... 21

*Fournier v. PFS Invs., Inc.*,
    997 F. Supp. 828 (E.D. Mich. 1998) ......................................................... 10

*Halaburda v. Bauer Publ'g Co., LP*,
    No. 12-cv-12381, 2013 WL 4012827 (E.D. Mich. 2015).................. *passim*

*Harris v. comScore, Inc.*,
    No. 11-cv-05807 (N.D. Ill. 2014)................................................................ 21

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ......................................................... *passim*

*In re CMS Energy ERISA Litig.*,
    2006 WL 2109499 (E.D. Mich. June 27, 2006) ........................................ 26

*In re Delphi Corp. Securities, Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ..................................................... 9, 12, 21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) .............................................................. 15

*In re Facebook Privacy Litig.*,
    No. 10-cv-02389 (N.D. Cal. 2010) ............................................................. 21

*In re Google Buzz Privacy Litig.*,
    No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ............ 14

*In re Michaels Stores Pin Pad Litig.*,
    No. 11-cv-03350 (N.D. Ill. June 8, 2011) .................................................. 22

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................................. 14

*In re Netflix Privacy Litig.*,
    No. 11-cv-00379 (N.D. Cal. Aug. 12, 2011) ............................................. 21

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)...... 17, 18, 20

*In Re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) ......................................... 15

*In re S. Ohio Corr. Facility*,
    173 F.R.D. 205 (S.D. Ohio 1997), *rev'd on other grounds*,
    24 F App'x 520 (6th Cir. 2001)................................................................. 11

*Kelly v. Corrigan*,
    890 F. Supp. 2d 778 (E.D. Mich. 2012) ................................................... 11

*Kinder v. Meredith Corp.*,
    No. 13-cv-11284 (E.D. Mich. 2016) ................................................... *passim*

*Kogan v. AIMCO Fox Chase L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000) ...................................................... 18, 23

*Lasalle Town Houses Coop. Assoc. v. City of Detroit*,
    No. 4:12-cv-13747, 2016 WL 1223354 (E.D. Mich. Mar. 29, 2016)........ 25

*Leonhardt v. ArvinMeritor*, Inc.,
    581 F. Supp. 2d 818, 836 (E.D. Mich. 2008)............................................ 15

*Shane Grp., Inc. v. BCBS of Mich.*,
    2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ............................ 11, 26, 27

*Stanley v. U.S. Steel Co.*,
    2009 WL 4646647 (E.D. Mich. Dec. 8, 2009)....................................... 9, 18

*Wise v. Popoff*,
    385 F. Supp. 977 (E.D. Mich. 1993) ........................................................ 10

**State Court Cases**

*Beaumont v. Brown*,
    257 N.W. 2d 522 (Mich. 1977) ...................................................................... 3

*Bradley v. Saranac Cmty. Sch. Bd. Of Educ.*,
    565 N.W. 2d 650 (Mich. 1997) ...................................................................... 3

*Hawley v. Prof'l Credit Bureau, Inc.*,
    76 N.W. 2d 835 (Mich. 1956) ....................................................................... 3

**Other Authorities:**

2016 Mich. Pub. Acts 92 ...................................................................................... 16

Fed. R. Civ. P. 23 ...................................................................................... 2, 8, 9

George D. Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards*, 69 Harv. L. Rev. 658 (1956) 5331 (Jan. 20, 1989) ....................... 25

M.C.L. §§445.1711, *et seq.* ...................................................................... 1, 3, 4, 16

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. 5331 (Jan. 20, 1989) ...................................................................... 3

## I.   INTRODUCTION

The class action settlement between Plaintiffs Elizabeth Moeller and Nicole Brisson (the "Plaintiffs") and Defendants American Media, Inc. ("AMI") and Odyssey Magazine Publishing Group, Inc. ("Odyssey," together, "Defendants"), which, if finally approved, resolves Plaintiffs' and the Class's claims against Defendants under Michigan's Preservation of Personal Privacy Act ("PPPA"), M.C.L. §§ 445.1711-1715, is the fourth and strongest yet to be reached. The settlement—preliminarily approved by this Court on June 8, 2017—creates a $7.6 million non-reversionary common fund from which class members will receive *pro rata* cash payments estimated to be around $100. Both the overall dollar amount and, more importantly, the per class member recovery, exceed each of the three previous PPPA settlements with other magazine publishers and dwarfs the recovery typically obtained in a statutory privacy class action. Equally important, the Settlement also puts an end to Defendants' practice of disclosing their customers' personal reading information to third parties.

While resolution was achieved in a relatively short period of time, obtaining this exceptional relief did not come easily. Rather, Plaintiffs battled through more than a year of hard-fought litigation, which involved complex factual investigation into the Defendants' disclosure practices, case-dispositive motion practice on issues then pending in the Sixth Circuit, and discovery. When the Parties thought

1

that there was a potential for resolution, they sought the assistance of the well-respected formal federal judge now at JAMS. And, while they ultimately achieved a settlement, it was only after the first mediation session failed, and the Parties returned to litigation.  After several additional months of further negotiations, they finally reached a deal.

In light of this exceptional result, Plaintiffs respectfully request pursuant to Federal Rule of Civil Procedure 23(e) that the Court approve attorneys' fees and expenses of 35% of the settlement fund, or $2,660,000, as well as an incentive award of $5,000 for each Plaintiff for their service as class representatives. Even though this settlement is more favorable to the class, the requested fee is the same percentage as was approved by Judge Ludington in *Kinder v. Meredith Corp.*, No. 13-cv-11284, dkt. 81 (E.D. Mich. 2016). In addition, the requested incentive award is equal to that approved in *Kinder*, but will be split between the two representative Plaintiffs.

For these reasons, and as explained further below, this Court should approve the requested fee and incentive award.

## II.    FACTUAL BACKGROUND AND UNDERLYING LAW

A brief summary of the PPPA, the litigation performed by Class Counsel for the Settlement Class's benefit, and the beneficial terms of the settlement itself

provide necessary context to the reasonableness of the requested fees and incentive award.

### A.     Plaintiffs' Allegations under the PPPA.

Michigan was "one of the first jurisdictions to acknowledge the concept of [a] 'right to privacy.'" *Beaumont v. Brown*, 257 N.W.2d 522, 526 (Mich. 1977), *overruled on other grounds by Bradley v. Saranac Cmty. Sch. Bd. of Educ.*, 565 N.W.2d 650 (Mich. 1997). This right protects against the "unreasonable and serious interference with [a citizen's] interest in not having his affairs known to others." *Hawley v. Prof'l Credit Bureau, Inc.*, 76 N.W.2d 835, 841 (Mich. 1956) (Smith, J. dissenting). The PPPA follows this tradition and prohibits retailers, publishers, and other entities engaged in the business of selling written materials at retail from disclosing records or information "concerning the purchase . . . of those materials by a customer that indicates the identity of the customer." M.C.L. § 445.1712. The legislature recognized that a person's choice in reading materials "is nobody's business but one's own," and passed the statute "to explicitly protect a consumer's privacy in buying and borrowing" such materials. *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. 5331, Jan. 20, 1989. At its core, the PPPA protects Plaintiffs' "right to read or observe what [they] please—the right to satisfy [their] intellectual and emotional needs in the privacy of [their] own home." *Stanley v. Georgia*, 394 U.S. 557, 565 (1969). Given

the importance of reader privacy, the version of the PPPA at issue here, dkt. 23, provides for statutory damages. M.C.L. § 445.1715.

Defendants AMI and Odyssey publish some of the most widely circulated magazines in the United States, such as the *National Inquirer*, *the Globe*, *OK!*, and *Men's Fitness*. (*See* Plaintiffs' Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Plaintiffs allege that Defendants supplement their sales and advertising revenues by selling information related to their customers' magazine subscription histories and personal reading habits. (*Id.* ¶¶ 2, 24, 26—27, 62—64, 72). But they don't just sell lists of names that subscribe to certain magazines. Rather, to increase the value of such information, Plaintiffs allege that Defendants trade their customers' protected reading information with certain data miners and other third parties in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. (*Id.* ¶¶ 2, 21, 24, 27, 35—36, 45—46.) Defendants thereafter "enhance" their own customer profiles with this additional data (e.g., their income levels, religion, ages, race, political affiliations, travel habits, medical conditions, etc.), and then sell the enhanced information to other unrelated third parties for a massive profit. (*Id.* ¶¶ 2, 21, 27, 38, 48, 66, 72.)

Plaintiffs further allege that no matter how they subscribe, customers never provide consent to disclose information to third parties related to their magazine subscriptions. (*Id.* ¶¶ 3, 28, 33—36, 43—46, 68, 69.) This is because Plaintiffs

allege that during the subscription process customers are never presented with or required to consent to any terms or policies informing them of Defendants' information disclosure practices. (*Id.*) Likewise, even after subscribing, Plaintiffs allege that Defendants fail to notify customers that they will disclose any information to third parties, let alone their protected reading information. (*Id.* ¶¶ 3, 28, 33—36, 43—46, 68, 69.) Nonetheless, Plaintiffs claim Defendants are in the business of disclosing all of their customers' protected reading information to various third parties without any consent. (*Id.* ¶¶ 2, 3, 27.)

### B. The Litigation and Work Performed to Benefit the Class.

In June 2015, Class Counsel began what would be an eight-month pre-suit investigation into Defendants' alleged data-sharing practices. (Declaration of Joseph I. Marchese ¶ 2, attached as Exhibit C.) While that investigation was on-going, the Michigan legislature voted to amend the PPPA and *Spokeo v. Robins* – a case regarding Article III standing in statutory cases – was then pending before the Supreme Court. *Id.* ¶¶ 5-6. Knowing both of these events would impact the litigation, Plaintiffs filed their class action lawsuit on April 14, 2016, dkt. 1, and Defendants have vigorously defended themselves from the outset, seizing on both issues. On May 16, 2016, the Supreme Court issued its opinion in *Spokeo* and on June 13, 2016, Defendants argued that *Spokeo* stripped Plaintiffs of standing under

Article III and that the recent amendments to the PPPA applied retroactively to end this case. (Dkt. 8.) Plaintiffs opposed that motion on July 5, 2016. (Dkt. 21.)

After Plaintiffs filed their opposition, but before Defendants' replied in support of their motion to dismiss, the Parties decided to explore the potential of an early resolution of the matter. (Declaration of Rafey S. Balabanian, ¶ 3, attached as Exhibit B; Marchese Decl. ¶¶ 8-10.) To that end, they sought and received a stay of the Court's ruling on the pending motion to dismiss. (*See* Dkts. 16-17.) In the meantime, the Parties agreed to engage in private mediation with the Honorable Wayne R. Andersen (ret.). (*See* Balabanian Decl. ¶ 4; Marchese Decl. ¶ 12.) In preparation for the mediation, Class Counsel prepared a detailed mediation statement detailing the strength of the Plaintiffs' case and proposals for resolution. (Marchese Decl. ¶ 11.)

Counsel for the Parties met at JAMS in Chicago on October 6, 2016. (Balabanian Decl. ¶ 4; Marchese Decl. ¶ 12.) Despite a full day of mediation, which included numerous rounds of arm's-length negotiations, the Parties were unable to make any real progress toward a resolution. (*Id.*) Further, at the conclusion of the mediation, Judge Andersen made a mediator's proposal to settle the case for a certain dollar amount, which was not accepted. (*Id.*) Having failed to reach a settlement or even make much progress, the Parties returned to litigation.

Defendants filed their reply in support of their Motion to Dismiss and then, on January 27, 2017, after full briefing, the Court denied Defendants' Motion to Dismiss in its entirety. (Dkt. 23.) Defendants then Answered on February 9, 2017, denying the substantive allegations and raising seventeen (17) affirmative defenses. (Dkt. 24.) On March 9, 2017, the Parties filed a Joint Case Management Statement, which outlined the extensive discovery and legal issues ahead. (Dkt. 25.) The Court accepted the proposed case management schedule and the Parties embarked on discovery, with Plaintiffs propounding their first sets of interrogatories and document requests. (Marchese Decl. ¶ 12.)

As litigation continued, however, the Parties kept-up their dialogue regarding settlement, and decided to re-engage Judge Andersen to see if the decision on the Motion to Dismiss and the fact that similar issues were then pending in the Sixth Circuit would impact the Parties' settlement positions. (*Id.* ¶ 15.) Turns out it did. Over the course of several weeks, Judge Andersen separately caucused with the Parties at least a dozen times (including on nights and weekends) and eventually succeeded in getting both sides to narrow their negotiating positions such that he was able to make another mediator's proposal. (Balabanian Decl. ¶ 7; Marchese Decl. ¶ 15.) That second mediator's proposal was ultimately accepted by all Parties on March 28, 2017. (*Id.*) The Parties then

7

diligently prepared and executed a written settlement agreement. The Court

granted preliminary approval to that Settlement on June 8, 2017. (Dkt. 34.)

> ### C. The Terms of the Settlement Agreement.

Class Counsel's effort resulted in the largest settlement—in terms of both

total sum and anticipated $100 per member relief—ever achieved under the PPPA.

(Balabanian Decl. ¶ 9; Marchese Decl. ¶ 16.) The Settlement provides an

exceptional result for the class, delivering both immediate cash and significant

prospective relief to approximately 415,000 magazine subscribers in Michigan.

(*Id.*) The Settlement creates a non-reversionary $7,600,000 settlement fund,

(Agreement ¶ 1.32), from which class members will receive a *pro rata* cash

payment. (*Id.* ¶ 2.1.) The Settlement also achieves one the primary purposes of the

lawsuit: prohibiting Defendant from disclosing its Michigan customers'

subscription information to any third-party companies for marketing purposes,

without first obtaining prior express written consent. (*Id.* ¶ 2.2.)

As further explained in detail below, the requested attorneys' fees and

incentive awards are reasonable.

## III. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED.

The requested fee award of $2,660,000, representing 35% of the common

fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure

23(h), courts may award "reasonable attorney's fees and nontaxable costs that are

authorized by law or by the parties' agreement."[2] Fed. R. Civ. P. 23(h); *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009). Here, the Class Action Settlement Agreement between the parties provides that Class Counsel may petition the Court for an award up to 35% of the Settlement Fund. (Class Action Settlement Agreement ¶ 8.1).

In common-fund cases such as this one, courts in the Sixth Circuit apply one of two fee calculation methods—percentage-of-the-fund or lodestar—and the fees need only "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). While the Court has discretion in deciding whether to apply the percentage-of-the-fund calculation or the lodestar method, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016), whichever method it ultimately selects must be justified by "a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at that fee," keeping the unique circumstances of each case in mind. *Id.* (quoting *Rawlings*, 9 F.3d at 516).

---

[2] The requested fee award also encompasses unreimbursed litigation expenses. (Agreement ¶ 8.1.) Reasonable litigation-related expenses are customarily awarded in common-fund cases and include costs such as document preparation and travel. *In re Delphi Corp. Securities, Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) (citations omitted). Thus, included in the requested fee award, Class Counsel respectfully seeks reimbursement of $15,605.02 for out-of-pocket expenses in these standard categories. (*See* Balabanian Decl. ¶ 16; Marchese Decl. ¶ 23.)

### A.     The percentage method should be used to calculate fees.

Despite the ability to select a fee computation method, there is a preference for using the percentage-of-the-fund method in common fund cases such as this. *See, e.g., In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend."); *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 831-32 (E.D. Mich. 1998) ("[M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees."); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) (same). Indeed, the percentage method has been used to calculate fees for three other major PPPA class action settlements in this district. *Halaburda v. Bauer Publ'g Co., LP*, No. 12-cv-12831, dkt. 68 (E.D. Mich. 2015); *Kinder v. Meredith Corp.*, No. 13-cv-11284, dkt. 81 (E.D. Mich. 2016); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, dkt. 54 (E.D. Mich. Sep. 29, 2016).[3] In contrast, the lodestar approach is most often applied in federal fee-shifting cases, particularly civil rights actions. *See, e.g., Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *see also Kelly v. Corrigan*, 890 F. Supp. 2d 778, 787 (E.D. Mich. 2012).

---

[3] Despite the district court's dicta regarding hourly rates in *Rodale*, it ultimately followed the weight of authority to grant fees based on a percentage of the settlement fund and used the hourly rates and summaries provided as part of a lodestar cross-check.

**B.      The reasonableness of the requested fees is supported by this Circuit's six-factor test.**

The Sixth Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: (1) the value of the benefit to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) whether the work was performed on a contingent fee basis; (4) the complexity of the litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services performed on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling*, 102 F.3d at 780; *In re Cardizem*, 218 F.R.D. at 533.

A "reasonable" fee in common-fund cases typically ranges "from 20 to 50 percent." *Shane Grp., Inc. v. BCBS of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D.Ohio 1997), *rev'd on other grounds,* 24 F. App'x 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *see also Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (Posner, J.) (referring to the "usual 33-40 percent contingent fee" charged by plaintiff's lawyers). The percentages awarded in the three other PPPA cases that have settled have ranged from the 35% requested here, *Kinder*, No. 13-cv-11284, dkt. 81, to 30% awarded in *Halaburda*, No. 12-cv-12381, dkt. 68, to a low of 25% in *Coulter-*

11

*Owens v. Rodale, Inc.*, No. 14-cv-12688, dkt. 54. The amount awarded is calculated as percentage "from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Gascho,* 822 F.3d at 282 (calculating the percentage, as "[a]ttorney's fees are the numerator" and "the dollar amount of the Total Benefit to the class (including the benefit to class members, attorney's fees, and [potentially] the costs of administration)" is the denominator).

In this case, the relevant factors compel the conclusion that the requested 35% fee award is reasonable in light of the exceptional result obtained.

### 1.   *Class Counsel have secured a valuable benefit for the class.*

The value of the benefit to the class is the most important factor in assessing the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (citation omitted); *In re Delphi*, 248 F.R.D. at 503 (describing result achieved as "primary factor"). Assessing the overall value includes consideration of both tangible and intangible benefits. *See Gascho*, 822 F.3d at 282 (requiring "appropriate consideration" of "cash and noncash settlement components" in assessing the total benefits to the class). The risk of continued litigation can also be considered in relation to the value of the benefit to the class under this factor. *Dick*, 297 F.R.D. at 299.

The Settlement here creates a larger settlement fund for fewer class members resulting in higher per class member recovery than the three other PPPA

settlements out there. Specifically, the Settlement creates a $7.6 million settlement fund for the benefit of 415,000 potential class members who, based on anticipated claims rates,[4] should expect to recover approximately $100 per person. This is a 26% to 64% greater individual recovery than the other PPPA settlements. *See Halaburda*, No. 12-cv-12831, dkt. 68 (securing a $775,000 fund for a class of 40,000 subscribers with claiming class members getting an estimated $74 *pro rata* payment); *Coulter-Owens v. Rodale*, No. 14-cv-12688 dkt. 54 (securing a $4.5 million fund for a class of approximately 580,000 subscribers with claiming class members getting an estimated $44 *pro rata* payment); *Kinder*, No. 13-cv-11284 dkt. 81(securing a $7.5 million fund for a class of approximately 980,000 subscribers with claiming class members getting an estimated $50 *pro rata* payment).

And when compared to the typical privacy class action settlement, the anticipated $100 *pro rata* payments are truly remarkable especially considering these cases often have enormous class sizes yet only receive *cy pres* relief with no individual payments to class members. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d

---

[4] The anticipated $100 per class member award is based on slightly more than 10% of the class filing claims, consistent with the prior three PPPA settlements. This is at the high end of the normal rate of claims for a consumer class action. *See Gascho*, 822 F.3d at 290 (crediting expert testimony "that response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent.")

811, 820-22 (9th Cir. 2012) (affirming $9.5 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in class of millions), *cert. denied* 134 U.S. 8 (Nov. 4, 2013); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (approving $8.5 settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of up to $10,000 per claim were available in a class of millions); *In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement providing *cy pres* payment as sole monetary relief in case where statutory damages of $2,500 per claim were available to class of millions).

Moreover, in light of the risks that were and are associated with continuing litigation, the Settlement is an outstanding result. Before the case was filed, the United States Supreme Court granted *certiorari* in *Spokeo*, which could have changed the law on Article III standing and deprived Plaintiffs their day in court. A decision in *Spokeo* was still pending when the case was filed. (Marchese Decl. ¶¶ 3, 6-7).  Also before the case was filed, both Houses of the Michigan Legislature voted to amend the PPPA to remove the statutory damages provision. (*Id.* ¶¶ 4-5). And more recently, on June 26, 2017, the Sixth Circuit agreed with this Court's analysis in its ruling on the Motion to Dismiss and affirmatively put to rest the arguments that the Plaintiffs lacked Article III standing under *Spokeo* and the

PPPA amendments retroactively applied. *Coulter-Owens v. Time Inc.*, 2017 WL 2731309 (6th Cir. June 26, 2017). That said, it did find that under the facts of that case the subscribers who purchased their magazine subscriptions through third-party online subscription agents did not purchase "at retail," as required by the PPPA. *Id.* at *6. This Settlement was reached approximately 3 months prior the Sixth Circuit's opinion, which certainly would have altered the course of the litigation and may have even ultimately barred recovery to members of the Settlement Class who subscribed to Defendants' publications through third parties. *See, e.g.*, *Leonhardt v. ArvinMeritor*, Inc., 581 F. Supp. 2d 818, 836 (E.D. Mich. 2008) ("absent settlement, all class members would be subject to the uncertainty, risk, hardship and delay attendant to continued litigation which ultimately might leave them with absolutely nothing.").

Although Class Counsel do not assign a monetary value to the prospective relief the Settlement affords, there is no doubt that this relief is valuable to the class as well—it was one of the main purposes of the lawsuit. *See, e.g., In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (considering structural changes to industry practices in assessing value of benefit); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (considering non-monetary benefits requiring changes in defendant's operating procedures in assessing value of benefit). Here, the Settlement's

prospective relief provides additional value to the class by ensuring that, for a period of four years, Defendants will not disclose their Michigan customers' subscriber information to third parties without prior express written consent. (Agreement ¶ 2.2(a).) Such relief is particularly valuable in light of recent amendments to the PPPA, which no longer prohibits disclosure of such information when it is "incident to the ordinary course of business" of the person disclosing the information. 2016 Mich. Pub. Acts 92, M.C.L. § 445.1713.

Weighed against the risks of continued litigation—the Court's eventual decision regarding class certification, the expert testimony and additional discovery necessary for trial, the Sixth Circuit's opinion, and potentially other obstacles that could strip the class of any recovery—the value of the immediate cash and prospective relief that the Settlement affords thus supports the reasonableness of the requested attorneys' fees. The first factor is well satisfied.

### 2. *Society has a stake in incentivizing the pursuit of complex consumer privacy litigation.*

Society has a strong stake in rewarding attorneys who produce the type of benefits achieved by the settlement here. *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 ("Consumer class actions have value to society more broadly, both as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources."). It is therefore in society's interest to encourage litigation that protects important consumer privacy rights that

would not otherwise be safeguarded. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996). ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized."); *In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society.") Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *Appoloni v. United States*, 218 F.R.D. 556, 563 (W.D. Mich. 2003), *amended*, 219 F.R.D. 116.

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect the privacy of Michiganders' personal reading choices. In fact, class action litigation in this area is the most realistic means of safeguarding the privacy of readers and viewers under the PPPA, especially given the fact that consumers are generally unaware that their privacy rights are being violated (here, Plaintiffs alleged Defendants secretly disclosed their customers' personal reading information behind their backs). Thus, the alternative to a class action in this case would have been no enforcement at all, and Defendant's allegedly unlawful conduct would have continued unabated.

17

This factor thus supports the requested award.

### 3.   Class Counsel took the case on a contingent basis, confronting a significant risk of nonpayment.

Undertaking an action on a contingency basis lends additional support to the reasonableness of a requested fee award. *See In re Cardizem*, 218 F.R.D. at 533; *Stanley*, 2009 WL 4646647, at *3 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). When attorneys invest significant time and resources in pursuing the litigation, in spite of the risk they will not be compensated, this factor is generally satisfied. *In re Rio*, 1996 WL 780512, at *18; *Kogan v. AIMCO Fox Chase L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000). The contingent nature of the case is amplified where class counsel face a formidable defendant. *See In re Cardizem*, 218 F.R.D. at 533.

As reflected in their retainer agreements with Plaintiffs, Class Counsel pursued the action purely on a contingency basis. (Marchese Decl. ¶ 1; Balabanian Decl. ¶ 11.) For over a year, Class Counsel invested significant time, effort, and resources to the litigation without any compensation. (Marchese Decl. ¶ 2; Balabanian Decl. ¶11.) Cognizant of the risk of nonpayment, Class Counsel nonetheless embarked on a fact-intensive investigation of Defendants' practices, engaged in dispositive motion practice, and exchanged written discovery. (Marchese Decl. ¶14; Balabanian Decl. ¶ 11.) Class Counsel also paid for and participated in not only a full day of private mediation, but weeks of discussions

18

and engagement with the mediator in order to try and resolve the action. (Marchese Decl. ¶¶ 12, 15; Balabanian Decl. ¶ 11.) Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. (Marchese Decl. ¶ 2, 22; Balabanian Decl. ¶ 12.) And given the defenses mounted by Defendants, as well as the fairly limited history of PPPA litigation, success on the legal issues presented by this case was far from certain. (Balabanian Decl. ¶ 12.) In addition, Class Counsel faced highly qualified defense counsel, who themselves represent leading magazine publishers in related PPPA litigation. (*Id.* ¶ 14.) Defense counsel has been successful in defeating other PPPA cases, further underscoring the risks Class Counsel faced in pursuing this litigation.

Given the contingent nature of the litigation and the significant risk of nonpayment, the third factor also supports the reasonableness of the fee award.

4.   ***The complexity of the litigation supports the requested fees.***

The complexity of the litigation reinforces the reasonableness of a requested fee award. *In re Cardizem*, 218 F.R.D. at 533. This case involved multiple layers of factual complexity, much of which was obscured at the outset due to Defendants' alleged concealment of their practices from consumers. As a result, this required extensive preliminary investigation into Defendants' business practices, their methods of data collection and aggregation, and the nature of their relationships with various third-party companies.

19

The case involved complex legal issues as well. Defendants challenged the basis of the lawsuit on constitutional grounds, based on new case law that did not even exist at the time of filing, before moving on to challenge the merits of Plaintiffs' claims, raising 17 affirmative defenses, including: (i) that AMI is not "engaged in the business of selling at retail" as is required under the PPPA, (ii) that magazine subscriptions were not "written material" under the PPPA, and (iii) that the PPPA, as alleged in this case, violated the freedom of speech clauses under the U.S. and Michigan Constitutions. (Dkt. 24.)

In the end, because this case involved complex factual and legal questions under the PPPA—its application to magazines and magazine publishing, the constitutionality of the underlying statute, and defining the scope of what it means to sell a magazine "at retail," an issue decided unfavorably for Plaintiffs by the Sixth Circuit—the complexity of the litigation further supports the reasonableness of the requested fees.

### 5. *The Parties are both represented by skilled counsel.*

The skill and standing of counsel on both sides, including their experience and professionalism, also validates the reasonableness of a requested fee award. *In re Rio*, 1996 WL 780512, at *18. When counsel for both parties have significant experience, "the ability of [counsel] to negotiate a favorable settlement in the face

20

of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504.

Class Counsel are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity. (Marchese Decl. ¶¶ 30-32; Balabanian Decl. ¶ 13.) In addition to being at the forefront of PPPA litigation, *see, e.g., Halaburda*, No. 12-cv-12831, dkt. 68, Edelson PC is widely known for its work in the area of consumer privacy litigation. *See, e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *In re Facebook Privacy Litig.*, No. 10-cv-02389, dkt. 69 (N.D. Cal. 2010) (recognizing Edelson PC as "pioneers in the electronic privacy class action field"); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379, dkt. 59 (N.D. Cal. Aug. 12, 2011) (noting Edelson PC's "significant and particularly specialized expertise in electronic privacy litigation and class actions"); *see also Harris v. comScore*, No. 11-cv-05807, dkt. 369 (N.D. Ill. 2014) (granting final approval to one of the largest consumer class actions ever brought under federal electronic privacy laws, in which Edelson PC served as sole lead counsel). The law firm of Bursor & Fisher, P.A. has also been recognized for the efforts it has made on behalf of consumer classes. *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has

won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

As mentioned above, Class Counsel faced formidable defense counsel in this action. Defendants were represented by two notable defense firms—ZwillGen PLLC and Wilson Elser Moskowitz Edelman & Dicker LLP. ZwillGen has a strong track record defending class actions under the PPPA, having secured appellate victories in *Deacon v. Pandora* and *Coulter-Owens v. Time*. Defendants have made clear that, but for the Settlement, they would dispute their liability, assert multiple defenses on their behalf, and even challenge the constitutionality of the PPPA itself through appeal.

Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

### 6. *The value of the legal services performed on an hourly basis is reasonable.*

The sixth and final factor assesses the value of the legal services performed on an hourly basis. *In re Cardizem*, 218 F.R.D. at 533. The value of the legal services performed essentially amounts to a lodestar, which involves multiplying

the number of hours reasonably expended by counsel by their reasonable hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v Eckerhart*, 461 U.S. 424, 433 n.7 (1983)).[5] A good-faith effort must be made to exclude hours that are excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *Brian A. v. Hattaway*, 83 F. App'x 692, 695 (6th Cir. 2003).

To date, Class Counsel have expended 952.4 hours litigating this case. ((Marchese Decl. ¶ 22; Balabanian Decl. ¶ 15.) The value of Class Counsel's services at their current hourly rates amounts to $524,069 (Marchese Decl. ¶ 22-23; Balabanian Decl. ¶ 16.) Therefore, the value of the time spent litigating Plaintiffs' claims and securing the Agreement, including reimbursable expenses of $15,605.02, totals $539,674.02. (Marchese Decl. ¶¶ 22, 23, 28; Balabanian Decl. ¶ 16.) This figure does not include the additional $35,000 to $50,000 in fees that Class Counsel will likely incur in connection with proceeding through final approval of the Settlement and the claims administration process and dealing with any potential objections. (Marchese ¶¶ 22, 23, 28; Balabanian Decl. ¶ 16.)

Of course, this number does not account for the Court's discretion to increase the base value of Class Counsel's services based on certain factors, known

---

[5] Although this factor may be viewed as a lodestar cross-check, *see Kogan*, 193 F.R.D. at 504, a cross-check is entirely optional. *See Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding that district courts have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional.)

as a "multiplier." *Van Horn v. Nationwide Property & Cas. Ins. Co.*, 436 F. App'x 496, 499-500 (6th Cir. 2011) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Salient factors include the results achieved, the risk of not prevailing in the action, the skill and experience of the attorneys, and awards in similar cases. *See Geier v. Sundquist*, 372 F.3d 784, 793 (6th Cir. 2004); *see also Van Horn*, 436 F. App'x at 500. These factors closely track the *Ramey* criteria used to assess reasonableness, discussed in detail above. (*See supra* § III.B.) Just as results, risk, and skill support the reasonableness of the fees under the percentage method, they also justify a multiplier of the base value of Class Counsel's services.

Here, the requested fee of $2,660,000 represents a multiplier of between 4.8 and 4.9 (depending on the amount of work going forward), which although on the higher end of the spectrum, is nonetheless more than justified given that this settlement is the best result yet for a class on claims brought under the PPPA. *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). That this case settled relatively quickly should not result in a lower fee award than what would otherwise be a reasonable result. As one commentator has put it:

> Where success is a condition precedent to compensation, "hours of time expended" is a nebulous, highly variable standard, of limited significance. One thousand plodding hours may be far less productive than one imaginative, brilliant hour. A surgeon who skillfully

24

performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more.

George D. Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards*, 69 HARV. L. REV. 658, 660 (1956).

Nevertheless, the value of Class Counsel's services on an hourly basis supports the reasonableness of the requested fees here, and should be approved.

### C.   The Requested Incentive Awards Reflect Ms. Moeller and Ms. Brisson's Active Involvement in this Action and Should be Approved.

Incentive awards are frequently awarded in common-fund cases within this Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003) (collecting cases). The approval of an incentive award is examined through the following factors: (1) the class representative's actions in protecting the class's interests and whether those actions resulted in a substantial benefit to the class; (2) any direct or indirect financial risk the class representative assumed; and (3) the time and effort the class representative dedicated to the action. *Lasalle Town Houses Coop Assoc. v. City of Detroit*, No. 4:12-cv-13747, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Based on these factors, an incentive award of $5,000 for each of the Plaintiffs is reasonable. It's equal to the amount awarded to the class representative in *Halaburda v. Bauer*, No. 12-cv-12831, dkt. 69, and half the amount awarded in *Kinder v. Meredith*, No. 13-

25

cv-11284, dkt. 81. It's also a fraction of amounts often awarded in comparable settlements. *See, e.g., Shane Grp.*, 2015 WL 1498888, at *18 (approving incentive awards for several named plaintiffs totaling $165,000, with individual awards ranging up to $45,000); *In re CMS Energy ERISA Litig.*, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding three class representatives $15,000 each for contributions to the case, including providing information to class counsel, reviewing documents, assisting with discovery, and participating in settlement discussions).

That said, the Sixth Circuit continues to express concern that incentive awards unjustly disproportionate to the named plaintiff's work and effort can create an incentive to act against the class's best interests. *See In re Pampers Dry Max Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). This problem is most acute where paltry settlements are made functionally unavailable to a class, or where a settlement contains no common fund at all. See, e.g., *Id.* at 716-17 (denying an incentive award where unnamed class members could not opt out of the settlement, and the likelihood of class members actually being able to take advantage of the monetary or injunctive relief was highly unlikely); *Hadix*, 322 F.3d at 898 (describing it as "plainly inappropriate" to grant an incentive award without a common fund). To avoid situations where a named plaintiff's receipt of a "bounty" acts as a disincentive for the class representative to act fairly, "[class] counsel must

26

provide the district court with specific documentation … of the time actually spent on the case by each recipient of an award" so that the court can be sure that the award is designed as compensation, not a windfall. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016).

As documented in their declarations, Ms. Moeller and Ms. Brisson both spent approximately 25 hours protecting the interests of the class through their involvement in this case. (Declaration of Nicole Brisson, ¶ 10, attached as Exhibit E; Declaration of Elizabeth Moeller, ¶ 10, attached as Exhibit D.) Both Plaintiffs assisted Class Counsel in investigating their claims, by detailing their magazine subscription histories and aiding in drafting the complaint. (Brisson Decl. ¶ 3; Moeller Decl. ¶ 3). Further, both Plaintiffs preserved and produced documents that would need to be turned over to the Defendants in discovery. (Brisson Decl. ¶ 6; Moeller Decl. ¶ 6.) Finally, the Plaintiffs were actively consulted during the settlement process. (Brisson Decl. ¶ 7-8; Moeller Decl. ¶7-8.) As such, their $5,000 incentive payments is hardly a "bounty" and should be approved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve attorneys' fees in the amount of $2,660,000, (2) grant Ms. Moeller and Ms. Brisson an incentive award of $5,000 each in recognition of their efforts on

behalf of the class, and (3) award such other and further relief as the Court deems reasonable and just.

Dated: July 31, 2017                    Respectfully submitted,

                                        **ELIZABETH MOELLER AND NICOLE BRISSON**, individually and on behalf of the settlement class,

                                        By: /s/ Rafey S. Balabanian
                                        One of Plaintiffs' Attorneys

                                        Jay Edelson
                                        jedelson@edelson.com
                                        Ari J. Scharg
                                        ascharg@edelson.com
                                        Benjamin S. Thomassen
                                        bthomassen@edelson.com
                                        Eve-Lynn Rapp
                                        erapp@edelson.com
                                        EDELSON PC
                                        350 North LaSalle Street, Suite 1300
                                        Chicago, Illinois 60654
                                        Tel: 312.589.6370
                                        Fax: 312.589.6378

                                        Henry M. Scharg
                                        hmsattyatlaw@aol.com
                                        LAW OFFICE OF HENRY M. SCHARG
                                        718 Ford Building
                                        Detroit, Michigan 48226
                                        Tel: (248) 596.1111
                                        Fax: (248) 671.0335

                                        Scott A. Bursor
                                        scott@bursor.com
                                        Joseph I. Marchese
                                        jmarchese@bursor.com
                                        Philip L. Fraietta

pfraietta@bursor.com
BURSOR & FISHER, PA
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

*Counsel for the Plaintiffs and the*
*Settlement Class*

29

## CERTIFICATE OF SERVICE

    I, Rafey S. Balabanian, an attorney, hereby certify that on July 31, 2017 I served the above and foregoing Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Award on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.


                                      /s/ Rafey S. Balabanian